IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 22, 2009 Session

# WILLIAM L. ODOM, JR., ET UX. v. HAROLD OLIVER, ET AL.

**Direct Appeal from the Chancery Court for Hardeman County**
**No. 16009      Martha B. Brasfield, Chancellor**

---

**No. W2008-01145-COA-R3-CV - Filed March 17, 2009**

---

Purchasers brought this action against sellers, realtor, and realty company of home that they purchased, alleging fraudulent concealment, and violation of the Tennessee Residential Property Disclosures Act. We affirm summary judgment for realtor and realty company, but we reverse the trial court's order granting summary judgment to sellers.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part;**
**Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Thomas M. Minor, Somerville, Tennessee, for the appellants, William L. Odom, Jr., and wife, Abby Odom.

Julie C. Bartholomew, Somerville, Tennessee, for the appellees, Harold Oliver and wife, Patsy Oliver.

Russell E. Reviere and Jonathan D. Stewart, Jackson, Tennessee, for the appellees, Todd Pulse and Hardeman County Results Realty, Inc.

## OPINION

### Background/Procedural History

On December 16, 2005, Plaintiffs William L. Odom, Jr. and wife, Abby Odom, (together "Buyers") purchased a house from Defendants Harold Oliver and wife, Patsy Oliver, (together "Sellers"). The exterior of the house was constructed out of wooden logs. When Sellers purchased the house in 1999, vinyl siding covered the logs on the outside. In the inside, however, the house was unfinished with exposed logs on the interior walls. During the time that they owned the house, Sellers made extensive improvements to the house, which included finishing the home's interior with sheet rock. The result of the renovations was that the house no longer looked like a log home.

When Sellers decided to sell the house, they listed it with Todd Pulse ("Mr. Pulse"), a licensed real estate agent working for Hardeman County Results Realty, Inc. ("Results Realty"). Sellers originally informed Mr. Pulse that they had made improvements to the house, and, eventually, sellers explained that the house was actually a log construction home covered on the outside with vinyl siding and they had installed sheet rock within the house. Sellers also completed and signed a Tennessee Residential Property Condition Disclosure ("Disclosure"). The Disclosure indicated that new wiring was installed five years ago, but there is no specific indication that Sellers installed sheet rock inside the house. The Disclosure Act also contains a buyer's acknowledgment that the "disclosure statement is not intended as [a] substitute for any inspection . . . [and that buyers] have a responsibility to pay diligent attention to and inquire about those material defects which are evidenced by careful observation."

Buyers eventually purchased the house from Sellers. The purchase agreement provided that Buyers maintained a right to inspect the house for, among other things, structural defects and interior water intrusions.[1] The purchase agreement also waives any warranty and provided the following:

Buyer shall, within _____ days after Binding Agreement Date, make such inspections described herein AND, by written notice to Seller, either:
(1) accept the Property in its present "AS IS" condition with any and all faults and no warranties expressed or implied. Seller has no obligation to make repairs;

---

[1]The purchase agreement stated the following:

**8. Inspections.**
All inspections/reports are to be made at Buyer's expense, including those required/recommended in the Home Inspection Report, unless otherwise stipulated in this Agreement. Seller shall cause all utility services and any pool, spa, and similar items to be operational so that Buyer may complete all inspections and tests under this Agreement. Buyer agrees to indemnify Seller for the acts of themselves, their inspectors and /or representatives in exercising their rights under this Purchase and Sales Agreement. Buyer waives any objections to matters of purely cosmetic nature disclosed by inspection. Buyer has no right to require repairs or alterations purely to meet current building codes, unless required to do so by governmental authorities. In the event Buyer fails to timely make any inspection, the Buyer shall have forfeited any rights provided under this paragraph eight (8).

Initial Inspection: Buyer and/or its inspectors/ representatives shall have the right and responsibility to enter the Property during normal business hours, for the purpose of making inspections and/or tests of the following items: all appliances, the plumbing systems (including but not limited to spa/whirlpool tub, hot tub, sauna, swimming pools, irrigation system), heating and air conditioning systems, electrical systems (including but not limited to smoke, fire, security system), sewage disposal systems, wells, fireplaces (including but not limited to gas starter and/or logs), environmental issues (including but not limited to asbestos, radon gas, and toxic mold), synthetic stucco (EIFS), cracked window panes and/or broken seals, *structural defects, interior water intrusion(s)*, standing water within foundation and/or basement, and the roof and decking for visible leaks. The inspection report is not to ascertain the cosmetic imperfections of Property or other items that Buyer has already considered, or should have already considered in determining the purchase price. (Emphasis added.)

OR  (2) furnish Seller a copy of the inspection report and a written list of items set forth in the inspection report which Buyer requires to be repaired and/or replaced in a professional and workmanlike manner.
OR  (3) furnish Seller with a list of written specified objections and immediately terminate this Agreement with all Earnest Money refunded to Buyer. Seller, upon request, shall be entitled to a copy of all inspection reports.

Nevertheless, Buyers did not have the house inspected before completing the sale.

Although Mr. Pulse contends that in a telephone conversation to Buyers' realtor he mentioned that the house was a log home, Buyers' realtor denied receiving this information. Buyers discovered that the house was constructed from logs in July 2006, when a strong wind storm tore some of the vinyl siding off of the house. Plaintiffs subsequently retained a residential home builder, Charles Hill ("Mr. Hill") to inspect the house. Mr. Hill discovered that up to sixty percent of the logs were damaged or rotting. Mr. Hill explained that this compromised the structural integrity of the home and believed it would cost $125,000.00 to repair. Buyers admit that neither Sellers nor Mr. Pulse were aware of any rot or moisture problem with the wooden logs before Buyers purchased the house.

Buyers filed their complaint on November 21, 2006, seeking rescission of the purchase agreement. They do not allege that Sellers knew that the wooden logs were rotting; rather, they allege that the house's nature as a log home was in and of itself a material fact that sellers had a duty to disclose to them. In response, Sellers, Mr. Pulse, and Results Realty filed motions for summary judgment. In support, of their claims against Mr. Pulse and Results Realty, Buyers produced the testimony of another realtor who opined that a seller and his realtor should disclose that a home is constructed of logs. This realtor further stated that she would disclose that information "because many people interested in purchasing a home do not have an interest in purchasing a log home. It has been [her] experience that it is more difficult to sell a log home."

The trial court granted summary judgment for all Defendants, and certified its order as a final adjudication pursuant to Tennessee Rule of Civil Procedure 54.02. As to Buyers' claim against Sellers, the trial court found that there was no dispute that Sellers were unaware that the wooden logs were rotten. In addition, the trial court articulated that there was no causation between any duty to disclose that the house was a log structure and the rotten logs. As to Mr. Pulse and Results Realty, the trial court found that there was no proof that competent real estate licensees generally recognize that a log cabin covered on the exterior with vinyl siding significantly reduces the structural integrity of a house.

**Issues**

Buyers raise two issues on appeal. First, they assert that the trial court erred in granting summary judgment in favor of Sellers by finding that the Sellers did not have a duty to disclose to

the Buyers the fact that the home was of log construction. In addition, as we rephrase it, Buyers argue that the trial court erred in granting summary judgment in favor of Mr. Pulse and Results Realty because the log construction of the Sellers' home was an "adverse fact" as defined by Tennessee Code Annotated § 66-5-206 and Mr. Pulse should, therefore, have disclosed this condition to Buyers. The Sellers also request this Court award them attorney fees incurred on this appeal.

## Standard of Review

We review a trial court's resolution of a motion for summary judgment *de novo* with no presumption of correctness. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). It is ultimately the moving party's burden to persuade the court that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). The moving party may meet this burden by producing evidence or referring to the nonmoving party's previously submitted evidence that either (1) affirmatively negates an essential element of the nonmoving party's claim, or (2) shows that the nonmoving party cannot prove an essential element of the claim at trial. *Id.* (citing *Hannan v. Alltell Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)). If the moving party sustains its burden, the nonmoving party must produce evidence of specific facts that establish that genuine issues of a material fact exist. *Id.* (citing *Byrd*, 847 S.W.2d at 215). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Id.* (quoting *Byrd*, 847 S.W.2d at 215). In considering a motion for summary judgment, we review the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Id.*

## Analysis

Although the trial court properly held that there was no genuine issue of material fact that Sellers were unaware that there were rotting logs, we perceive that Buyers also argued that the fact that the house was a log home was in and of itself a material fact that Sellers were obliged to disclose to them. Buyers also appeal the trial court's determination that the log construction of the home was not an "adverse fact" which realtors have a duty to disclose. We address both arguments below.

## Sellers' Duty to Disclose

This Court recognizes two actionable types of concealment: where the concealment constitutes a trick or contrivance and when there is a duty to disclose.[2] *Cont'l Land Co. v. Inv. Props. Co.*, No. M1998-00431-COA-R3-CV, 1999 WL 1129025, at * 5–6 (Tenn. Ct. App. 1999). A party commits fraudulent concealment for failing to disclose a known fact or condition where he had a duty to disclose and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury. *Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 539 (Tenn. 1998). For the nondisclosure to constitute fraud, the charged party must have knowledge of an existing fact or condition and a duty to disclose that fact or condition. *Lonning v. Jim Walter Homes, Inc.*, 725 S.W.2d 682, 685 (Tenn. Ct. App. 1986). The fact or condition must be a material fact affecting the essence of the subject matter of the contract. *Id.* (citing *Simmons v. Evans*, 206 S.W.2d 295, 296 (Tenn. 1947)). Quoting the Restatement (Second) of Torts Section 538, we have opined that a fact is material if

> (a) a reasonable [person] would attach importance to its existence or non-existence in determining his [or her] choice of action in the transaction in question; or

> (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his [or her] choice of action, although a reasonable [person] would not so regard it.

*Patel v. Bayliff*, 121 S.W.3d 347, 353 (Tenn. Ct. App. 2003) (quoting *Lowe v. Gulf Coast Dev., Inc.*, No. 01A01-9010-CH-00374, 1991 WL 220576, at *8 (Tenn. Ct. App. 1991)). Although contracting parties have a duty to disclose material facts affecting the essence of a contract's subject matter, a party does not have a duty to disclose a material fact where ordinary diligence would have revealed the undisclosed fact. *Simmons*, 206 S.W.2d at 296; *Lonning*, 725 S.W.2d at 684. "A party cannot be permitted to claim that he has been taken advantage of if he had the means of acquiring the needed information or if, because of his business experience or his prior dealings with the other party, he should have acquired further information before he

---

[2]As this Court stated in *Continental Land Company*:

As a general rule to constitute fraud by concealment or suppression of the truth there must be something more than mere silence, or a mere failure to disclose known facts. There must be a concealment, and the silence must amount to fraud. Concealment in this sense may consist in withholding information asked for, or in making use of some device to mislead, thus involving act and intention. The term generally infers that the person is in some way called upon to make a disclosure. It may be said, therefore, that, in addition to a failure to disclose known facts, there must be some trick or contrivance intended to exclude suspicion and prevent inquiry, or else there must be a legal or equitable duty on the party knowing such facts to disclose them.

*Cont'l Land Co. v. Inv. Props. Co.*, No. M1998-00431-COA-R3-CV, 1999 WL 1129025, at * 5–6 (Tenn. Ct. App. 1999) (citing *Hall v. DeSaussure*, 297 S.W.2d 81, 87 (1956)).

acted." *Macon County Livestock Mkt., Inc. v. Kentucky State Bank, Inc.*, 724 S.W.2d 343, 351 (Tenn. Ct. App. 1986). In addition, a plaintiff's damages must have been caused by his reasonable reliance on the nondisclosure, i.e., the plaintiff was not aware of the material fact and would have acted differently if the plaintiff knew of the concealed or suppressed fact. *See Simmons*, 206 S.W.2d at 287–88; *Body Invest, LLC v. Cone Solvents, Inc.*, No. M2006-01723-COA-R3-CV, 2007 WL 2198230, at *6 (Tenn. Ct. App. 2007)(*no perm. app. filed*).

Sellers assert that the trial court properly granted summary judgment because there was no proof that Sellers fraudulently intended to deceive Buyers. Because a plaintiff is not required to demonstrate an "intent to deceive" to establish a claim for fraudulent concealment, we cannot agree with Sellers' argument on this point. *See Kincaid v. Southtrust Bank*, 221 S.W.3d 32, 39–40 (Tenn. Ct. App. 2006) ("Constructive fraud is a breach of a legal or equitable duty which is deemed fraudulent because of its tendency to deceive others . . . [n]either actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud."); *Pitz v. Woodruff*, No. M2003-01849-COA-R3-CV, 2004 WL 2951979, at *8 (Tenn. Ct. App. 2004); *Edmondson v. Coates*, No. 01A01-9109-CH-00324, 1992 WL 108717, at *9–11 (Tenn. Ct. App. 1992); *Lonning v. Jim Walter Homes, Inc.*, 725 S.W.2d 682, 684 (Tenn. Ct. App. 1986). Sellers' second argument appears to be two-fold: 1) Sellers did not conceal a defect because a log-frame home is not defective, and 2) Buyers have failed to establish that the failure to disclose the log character of the home actually caused Buyers' damages. Because a cause of action for fraudulent concealment requires that a seller conceal a "material fact or condition," rather than a defect, we address Sellers' argument as it pertains to whether a house's condition as a log structure is material.

Buyers, on other hand, argue that there is a genuine issue of material fact whether Sellers had a duty to disclose that the house was originally constructed out of logs. First, Buyers allege that the house's log character is a material fact because a reasonable person would attach importance to a house's character as a log construction in determining whether to purchase a house. Buyers also argue that Sellers had a duty to disclose because Buyers could not have discovered that the house was a log home through common observation.

Because the parties disagree as to the relevance of the "as is" clause in the purchase agreement, we first address the weight an "as is" provision has when a party alleges fraudulent concealment. Courts generally enforce a contract, including an express disclaimer of warranties such as an "as is" clause, absent fraud or mistake. *Jaffe v. Bolton*, 817 S.W.2d 19, 25 (Tenn. Ct. App. 1991). In *Edmondson v. Coates*, this Court rejected the argument that "[buyers] cannot prevail on their fraudulent concealment claim because the 'as is' clause assigns to the buyers the risk of any and all defects" on the basis that enforcing the express disclaimer of warranties "would be to blindly enforce a contract obtained by fraud." *Edmondson*, 1992 WL 108717, at *10-11; *see also Godwin Aircraft, Inc. v. Houston*, 851 S.W.2d 816, 822 (Tenn. Ct. App. 1992) ("As is" disclaimer and opportunity for buyer to inspect aircraft did not relieve the seller of liability for misrepresentation that the aircraft was airworthy because a tortious misrepresentation case is a distinct and separate cause of action from breach of warranty case.). Thus an inquiry as to the effect of the "as is" clause just begs the question whether Sellers committed fraud. This

Court noted, however, in *Pitz v. Woodruff,* No. M2003-01849-COA-R3-CV, 2004 WL 2951979 (Tenn. Ct. App. 2004), that

> *Edmondson* says only that an 'as is' provision in a contract is not a shield where the seller knew of a defect and withheld the information from a buyer. It does *not* say that the 'as is' provision cannot be considered *at all* in determining whether the buyer's reliance on the seller's representation was reasonable.

*Pitz*, 2004 WL 2951979, at *9. We, therefore, shall consider the "as is" clause among other factors in inquiring whether a plaintiff's reliance on a defendant's misrepresentation or omission was reasonable. *Id.*

We now address Buyers' argument that Sellers had a duty to disclose that the house was constructed from logs because that information is a material fact or condition. Because Buyers do not allege that Sellers had any reason to know that Buyers specifically wanted a conventional home and not a log-framed home, we limit our inquiry as to whether a reasonable person would attach importance to the fact that the house was a log home in determining his or her choice in the transaction in question. Comments to the Restatement (Second) of Torts emphasize that

> d. In determining whether a fact is material *it is not necessary that it be one that a reasonable man would regard as affecting the pecuniary advantages of the transaction.* There are many more-or-less sentimental considerations which the ordinary man regards as important. Thus it is natural that a person should wish to possess portraits of his ancestors even though they have no value as works of art. A fraudulent misrepresentation that a particular picture is a portrait of the purchaser's great-grandfather is a misrepresentation of a material fact.

> e. As in all cases in which the conduct of a reasonable man is the standard, *the question whether a reasonable man would have regarded the fact misrepresented to be important in determining his course of action is a matter for the judgment of the jury subject to the control of the court.* The court may withdraw the case from the jury if the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.

Restatement (Second) Torts § 538, cmt. d, cmt. e (1977) (emphasis added). We do not think that the fact that the house is a log home is so obviously unimportant that it can be determined as a matter of law that Sellers had no duty to disclose it. This issue, therefore, is a genuine issue of material fact that is best determined by the trier of fact.

Regardless of whether the log-based structure of the house is a material fact, Sellers only had a duty to disclose that the house was a log home if that information was not apparent through common observation. Although Buyers argue that they could not have discovered the house's log character through common observation, Sellers respond that they permitted Buyers to inspect the property and Buyers failed to do so. The Tennessee Supreme Court has recognized that common observation requires a buyer to exercise ordinary diligence. *Simmons v. Evans*, 206

S.W.2d 295, 285–86 (Tenn. 1947). This Court has articulated, however, that ordinary diligence does not necessarily require a home-buyer to obtain an expert inspection. *Edmondson v. Coates*, No. 01A01-9109-CH-00324, 1992 WL 108717, at \*12 (Tenn. Ct. App. 1992). "It may be that a jury of that parties' peers would find that ordinary diligence does so require, but it should not be assumed as a matter of law at the summary judgment stage." *Id.* We find, therefore, that there is also a factual dispute regarding whether Buyers could, with ordinary diligence, have discovered that the house was constructed from logs. The question whether the log construction is a material fact and the question whether the log construction could have been discovered in the exercise of ordinary diligence are two inquiries that raise a genuine issue of material fact whether Sellers had a duty to disclose. We find, therefore, that the trial court erred in granting summary judgment in favor of Defendant Sellers.

Sellers also allege that Buyers failed to raise any genuine issue of material fact that the failure to disclose that the house was a log home did not cause the damages incurred to repair the rotten logs. Neither party addresses this issue in-depth. However, Mr. Hill, a general contractor, opined that log homes are more susceptible to fungal spores which cause rotting and require a greater amount of care and maintenance than a conventional home. In light of Mr. Hill's testimony, we do not believe that Sellers have shown that Buyers cannot prove causation at trial; summary judgment, therefore, is also inappropriate on this ground.

### Realtor's Duty to Disclose

The Tennessee Residential Disclosure Act provides for a homebuyer's exclusive remedy against a real estate licensee. Tenn. Code Ann. § 66-5-206 (2004). Tennessee Code Annotated § 66-5-206 states that

> [i]f a real estate licensee performs [the duty to inform parties of rights and obligations], the licensee shall have no further duties to the parties to a residential real estate transaction under this part, and shall not be liable to any party to a residential real estate transaction for a violation of this part or for any failure to disclose any information regarding any real property subject to this part. However, a cause of action for damages or equitable remedies may be brought against a real estate licensee for intentionally misrepresenting or defrauding a purchaser. A real estate licensee will further be subject to a cause of action for damages or equitable relief for failing to disclose adverse facts of which the licensee has actual knowledge or notice. "Adverse facts" means conditions or occurrences generally recognized by competent licensees that significantly reduce the structural integrity of improvements to real property, or present a significant health risk to occupants of the property.

Tenn. Code Ann. § 66-5-206 (2004). The trial court found that Buyers failed to demonstrate that competent realtors generally recognized that a house constructed from logs significantly reduced the structural integrity of the house. In opposing summary judgment, Buyers submitted an affidavit of a realtor that averred that

when listing [a home originally constructed as a log home and thereafter covered with vinyl siding on the exterior and sheetrock on the interior], there should be full disclosure that the home is constructed of logs as opposed to wood studs. Although the Tennessee Residential Property Condition Disclosure form, which all [s]ellers in Tennessee are required to complete and sign, does not specifically address such a situation, in my opinion Sellers should disclose this fact in narrative form on the disclosure form itself or in some other manner.

It is my further opinion that if the listing agent is aware of such construction and subsequent modifications, he or she has an obligation to disclose these facts when dealing with prospective Purchasers and/or their agents.

The trial court considered the realtor's affidavit but determined that her testimony was insufficient to establish that realtors generally know that a log home with vinyl siding causes structural problems. We agree and, therefore, affirm the trial court's order granting summary judgment to Defendants Results Realty and Mr. Pulse.

### Attorney Fees

Sellers also argue that they are contractually entitled to attorney fees on this appeal. The language in the purchase agreement provides that "[i]n the event that any party hereto shall file suit for breach or enforcement of this Agreement (including suits filed after closing which are based on or related to the Agreement), the prevailing party shall be entitled to recover all costs of such enforcement, including reasonable attorney's fees." In light of our determination that the trial court erred by granting Sellers' motion for summary judgment, we find that Sellers are not entitled to recover attorney fees for the instant appeal.

### Conclusion

For the foregoing reasons, we affirm in part and reverse in part. We reverse the trial court's judgment granting Sellers Mr. and Mrs. Olivers' motion for summary judgment. We affirm the trial court's judgment granting Defendants Hardeman County Results Realty, Inc., and Mr. Pulse's motion for summary judgment. The Olivers' request for attorney fees on appeal is denied. Costs of this appeal are taxed one-half to the Appellees, Harold Oliver and wife, Patsy Oliver, and one-half to the Appellants, William L. Odom, Jr., and wife, Abby Odom, and their surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE